[No. A104727. First Dist., Div. One. Mar. 26, 2004.]

CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU, Petitioner, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY, Respondent;
LYNDA O., Real Party in Interest.

## Counsel

Silvano B. Marchesi, County Counsel, and Paul Muñoz, Deputy County Counsel, for Petitioner.

Willis & Lawrence and Judith E. Lawrence for Real Party in Interest.

## Opinion

**STEIN, Acting P. J.**—The Contra Costa County Children and Family Services Bureau (bureau) challenges an order of the Contra Costa County Superior Court, Juvenile Division (juvenile court), which granted the motion of Lynda O. (mother) to set aside prior orders of the court entered May 14, 1999, in the juvenile dependency proceeding (Welf. & Inst. Code, § 300 et seq.)[1] concerning mother's child, Angelyca. In conjunction with its order, the juvenile court set a new jurisdictional hearing. (§ 355.)

Mother contends here, as she did below, that the court denied her due process at the 1999 jurisdictional hearing when it appointed a guardian ad litem for her in violation of the procedural requirements specified in *In re Sara D.* (2001) 87 Cal.App.4th 661 [104 Cal.Rptr.2d 909] (*Sara D.*). We will hold that the juvenile court erred because, on this record, mother was not denied due process, nor was she prejudiced by the appointment of a guardian ad litem. Furthermore, *Sara D.* may not be applied to vacate final orders of the juvenile court in dependency proceedings, absent the filing of a petition in accordance with section 388. Having previously stayed the juvenile court's order and issued an alternative writ, we now issue a peremptory writ.[2]

## BACKGROUND

Angelyca has been a dependent child of the juvenile court since October 5, 1999, having been removed from her mother's custody on January 20, 1999.

At the contested jurisdictional hearing, mother, represented by counsel, was prepared to admit to jurisdiction in accordance with the terms of a mediation agreement, previously signed by her. Thereafter, when asked by the court whether her admission was the product of threats, mother replied, "Yes . . . . Those are threats to me because I would never sign something that I wouldn't

---

[1] Unless otherwise noted, further statutory references are to the Welfare and Institutions Code.

[2] Although the bureau also filed a notice of appeal from the order entered below, we determined that it is in Angelyca's best interest to expedite our review in this writ proceeding.

be forced to sign because of having to do it to get my children back. I would never have signed it, so I take those as threats. It's either you do it, or you don't get your kids." Mother stated that the social worker and the maternal grandmother had earlier threatened her. The social worker denied making threats, explaining that she only told mother of the six-month time limit for reunification.

When the court inquired, "Are you still willing to go forward today, or would you like to have a contest on this matter," mother replied, "I'm willing to go forward." Nonetheless, the court commented, "If you feel that the only reason you want to go forward today is because of the threats that your family has made towards you . . . then . . . I can't make a finding that you're voluntarily giving up your trial rights." Mother answered, "Ma'am, I can't— cannot do anything but benefit me for one thing, but if it's something that needs to be done, then it needs to be done. And hopefully, that it will all turn out just fine."

At that point, the court directed counsel to speak with mother, and asked to see all counsel in chambers. Thereafter, the court noted that it had "some concerns about her ability to go forward today given the statements made to the court by mother both at the hearing that was on the record as well as the hearing that we had outside of the record, and it appears to the Court that it is essential that mother be able to effectively assist her attorney in these proceedings, and I don't think that mother has the capacity at this particular point in time to do so, so I am going to be appointing a guardian ad litem for mother *to assist her in these proceedings.* Mr. Pay will remain as counsel of record, but the guardian ad litem will be—*will facilitate communications between mother and her attorney,* and it would be the Court's intention to set this matter for hearing on another date." (Italics ours.)

At the continued hearing on May 14, 1999, mother's guardian ad litem explained that "I accepted the role as [guardian ad litem]. I met with mother for about two hours . . . and we are prepared to go forward with accepting the mediation agreement and setting the dispositional date and putting on the record some problems with visitation . . . ." Prior to accepting mother's admission based on the mediation agreement, the following exchange occurred between the court and the guardian ad litem.

"THE COURT: So you're in agreement, Ms. Perkins, that your client has the capacity to understand and agrees to this agreement?

"MS. PERKINS: She clearly has the capacity . . . she and I have gone over this. This is more of a frustration anger management issue which we'll deal with later. But she has the capacity, and we have spent sufficient time, and

I've gone over it, so I'm not making this on her behalf or substituting her knowledge and skill. . . . She's competent and knows what she's doing. And yes, we accept the modified proposed mediation agreement . . . ."

Shortly thereafter, the court explained to mother "what we're doing."

"You're going to go over a form with your attorneys . . . that explains the rights that you have in this proceeding and what you'd be giving up by submitting to the Court on the counts against you that have been charged in the peti tion . . . and I need you to look it over. And if you understand it, just sign it and initial in the appropriate places, and then it would be submitted to me. . . . You need to understand a submission, in all likelihood, means that the Court would find those allegations to be true as we stated on the record. Do you understand?

"THE MOTHER: Yes.

"THE COURT: All right. So if you have any questions, just talk to your attorneys about that.

"THE MOTHER: Thank you."

Subsequently, the court again questioned mother:

"I'm holding up this form. Have you had a chance to go over this form with your attorney, the form entitled 'Waiver of rights?'

"THE MOTHER: Yes, I have.

"THE COURT: And you've had a chance to go over it not only with your attorney, but Ms. Perkins, and you've read it, and you understand it?

"THE MOTHER: Yes.

"THE COURT: Do you have any questions about the form?

"THE MOTHER: No, sir.

"THE COURT: You have signed it, initialed in the appropriate places; is that correct?

"THE MOTHER: Yes, I have.

"THE COURT: All right. Then I'll find the waiver is expressly, voluntarily, intelligently made. . . ."

At a contested dispositional hearing on October 5, 1999, Angelyca was retained in out-of-home placement, and reunification services were provided to mother.

Mother did not appeal, although findings and orders made prior to the dispositional hearing, including those made at the jurisdictional hearing, may be reviewed on appeal from the dispositional order, which is the first appealable judgment in a dependency proceeding. (*In re Meranda P.* (1997) 56 Cal.App.4th 1143, 1149–1150 [65 Cal.Rptr.2d 913].) Following review hearings, the court eventually terminated reunification services and set a section 366.26 hearing to determine whether mother's parental rights should be terminated. Mother did not petition for an extraordinary writ (§ 366.26, subd. (*l*)), nor did she seek appellate review following the January 16, 2001 section 366.26 permanency planning hearing, at which Angelyca was placed in long-term foster care. Periodic review hearings were conducted on August 27, 2001, February 19, 2002, and August 6, 2002. (§ 366, subd. (b).) Mother did not seek appellate review following any of these hearings.

On July 16, 2003, mother's counsel—who had represented her on and after January 16, 2001—filed a "Motion to Set Aside Jurisdictional Findings," asserting that mother's right to due process was violated by the appointment of the guardian ad litem. The motion was not verified, nor did it include supporting affidavits or declarations. Instead, it relied on the records in the case. Viewing the issue as solely one of law, the court set aside the jurisdictional findings. This petition followed.

## DISCUSSION

Relying on *Sara D., supra,* 87 Cal.App.4th 661, and *In re Joann E.* (2002) 104 Cal.App.4th 347 [128 Cal.Rptr.2d 189] (*Joann E.*), mother contends that (1) the appointment of a guardian ad litem at the jurisdictional hearing denied her due process; and (2) this alleged error nullifies all subsequent proceedings in the case because the bureau failed to demonstrate lack of prejudice beyond a reasonable doubt.[3]

*Sara D.* arose on a direct appeal in a case where a guardian ad litem had been appointed for the parent based solely on her attorney's statement the

---

[3] Mother also argues that our review is one for abuse of discretion, contending that we are bound by the juvenile court's findings. The juvenile court, however, considered the question to be one of law, gave retroactive application to *Sara D., supra,* 87 Cal.App.4th 661, and purported to vacate previously final orders.

In addition, mother contends that the bureau failed to properly object to the court's orders. We disagree, and find that the bureau adequately preserved the issues for our review.

parent did not understand the proceedings. The appellate court concluded that "a guardian ad litem should be appointed if the requirements of either Penal Code section 1367 or Probate Code section 1801 are met [and] that the trial court must find by a preponderance of the evidence that the parent comes within the requirements of either section." (*Sara D., supra*, 87 Cal.App.4th at p. 667.)

*Sara D.* also set forth a new procedure to be followed before such appointments are made at counsel's request, given the broad powers of a guardian ad litem. (*Sara D., supra*, 87 Cal.App.4th at p. 668.) Absent the parent's consent to the appointment of a guardian ad litem, the court must provide the parent with an informal hearing and opportunity to be heard on the question of the appointment. (*Id.* at pp. 671–672.) At this informal hearing, the court or the parent's counsel should explain "the purpose of a guardian ad litem and why the attorney felt one should be appointed." (*Id.* at p. 672.) The parent should be given an opportunity to respond. (*Ibid.*) Because the parent had not been afforded these new procedural protections, and because the appellate record did not demonstrate a lack of prejudice beyond a reasonable doubt, the court reversed the order appointing the guardian ad litem and the jurisdictional and dispositional orders. In doing so, the court explained that "[t]he inquiry we have suggested is consistent with Code of Civil Procedure section 373, subdivision (c), which authorizes the court to appoint a guardian ad litem on its own motion. To exercise this authority, the court must obtain sufficient information that the parent does not understand the proceedings or cannot assist his/her attorney in protecting his/her interests. Inquiry is one way to obtain this information." (*Ibid.*)

Even assuming that the protections enunciated in *Sara D.* may be applied retroactively to mother's 1999 jurisdictional hearing, here it was the court, not counsel, who raised the concern that mother was incompetent to admit to jurisdiction. It was only after hearings on and off the record, with mother and counsel, that the court acted on its own motion to appoint the guardian ad litem. (Code Civ. Proc., § 373, subd. (c); Evid. Code, § 664.) Moreover, the guardian ad litem was appointed solely "to assist" mother and to "facilitate communications between mother and her attorney," not to act for mother. Nor did the guardian ad litem act for mother. Instead, the guardian ad litem explained to the court that in fact mother was "competent and knows what she's doing." And it was mother who stated that she understood her waiver, signed by her, which was found to be "expressly, voluntarily, intelligently made . . . ." Nothing in the record suggests that mother resisted appointment of or assistance from the guardian ad litem, that the scope of the guardian ad litem's duties was expanded, or that the guardian ad litem's actions in any way prejudiced mother. (*In re Christina B.* (1993) 19 Cal.App.4th 1441, 1452–1454 [23 Cal.Rptr.2d 918].)

The question of retroactive application of the procedural rules established by *Sara D.* has never been addressed. Nothing in *Sara D.* purports to give the case retroactive application to proceedings resulting in orders and judgments as to which the time for appeal has lapsed. *Sara D.* was decided March 14, 2001. (*Sara D., supra,* 87 Cal.App.4th 661.) In another direct appeal, Division Three of this court applied *Sara D.* to a challenge to the appointment of a guardian ad litem at a jurisdictional hearing held on March 22, 2001. (*Joann E., supra,* 104 Cal.App.4th 347.) Finding error and prejudice, the court noted that the appellant was not required to challenge the guardian ad litem appointment order by prehearing writ petition (Code Civ. Proc., § 1085; Cal. Rules of Court, rule 56), but could instead raise the claim of error on appeal from the subsequent dispositional order and judgment. (*Joann E.,* at p. 353.) The court did not, however, purport to apply *Sara D.* to vacate prior final orders of the juvenile court.

"[N]o hard and fast rules determine the extent to which a decision is given retroactive effect; 'determinations of this nature turn on considerations of fairness and public policy.' " (*Isbell v. County of Sonoma* (1978) 21 Cal.3d 61, 74 [145 Cal.Rptr. 368, 577 P.2d 188].) "Of course, even retroactive decisions generally do not extend to cases in which final judgments have already been entered." (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 851 [4 Cal.Rptr.2d 615, 823 P.2d 1216].)[4] In cases involving dependent children of the juvenile court, our Supreme Court has made it plain that "[i]n developing parameters on the reunification process, 'the Legislature balanced numerous competing fundamental interests, including the child's compelling interest in "a placement that is stable, permanent, and which allows the caretaker to make a full emotional commitment to the child," the parents' compelling "interest in the companionship, care, custody and management" of their child . . . and the "preservation of the family whenever possible. . . ." ' " (*In re Zacharia D.* (1993) 6 Cal.4th 435, 446 [24 Cal.Rptr.2d 751, 862 P.2d 751].) "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability' . . . and in fact, there is a rebuttable presumption that continued foster care is in the best interests of the child." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317 [27 Cal.Rptr.2d 595, 867 P.2d 706].)

Any retroactive application of *Sara D., supra,* 87 Cal.App.4th 661, to final orders of the juvenile court would undermine the careful balancing of the respective interests, and public policy, established by the Legislature in its enactment of the juvenile dependency statutory scheme. Here, for example, mother has not had custody of Angelyca for five years. Mother's failures at

---

[4] Although in this case mother's parental rights have not been terminated, all post-disposition orders in the case are final judgments. (§ 395; *In re Meranda P., supra,* 56 Cal.App.4th 1143, 1149–1151.)

reunification resulted in termination of services in September 2000, well before the March 2001 decision in *Sara D.*, and it cannot be applied to vacate final orders of the juvenile court as to which the time for appeal has lapsed. (See also *Adoption of Alexander S.* (1988) 44 Cal.3d 857, 867–868 [245 Cal.Rptr. 1, 750 P.2d 778]; *Adoption of Kelsey S., supra,* 1 Cal.4th at p. 851; *In re Darlice C.* (2003) 105 Cal.App.4th 459, 466 [129 Cal.Rptr.2d 472], which preclude collateral attack on such orders.)

■ A party in a pending dependency proceeding, for whom a guardian ad litem was appointed without the protections required by *Sara D.*, is not without remedies, and may move to vacate the guardian's appointment at any time. The juvenile court on such a motion, utilizing the procedures mandated by *Sara D.*, should hold a hearing addressed solely to the necessity of the continuing guardian ad litem appointment. (*Sara D., supra,* 87 Cal.App.4th 661.)

In addition, the party may move to modify orders in the case utilizing the "escape mechanism" of a section 388 petition, which is "built into the process to allow the court to consider new information." (*In re Zacharia D., supra,* 6 Cal.4th at pp. 454–455.) On the party's verified petition reciting "any change of circumstance or new evidence which are alleged to require such change of order," the juvenile court will order a hearing "[i]f it appears that the best interests of the child may be promoted by the proposed change of order." (§ 388, subds. (a), (c).) At such a hearing, the burden of proof, by a preponderance of the evidence (*In re Stephanie M., supra,* 7 Cal.4th at p. 317), is on the moving party. (*In re Zacharia D., supra,* 6 Cal.4th at p. 455; *In re Marilyn H.* (1993) 5 Cal.4th 295, 309 [19 Cal.Rptr.2d 544, 851 P.2d 826].)

## CONCLUSION AND DISPOSITION

■ The juvenile court erred when it granted mother's motion to set aside the jurisdictional findings based on the appointment of the guardian ad litem. *Sara D.* has no application to the facts of this case. Moreover, while a party may move to vacate the appointment of a guardian ad litem made in violation of the due process requirements enunciated in *Sara D., supra,* 87 Cal.App.4th 661, that case may not be applied to vacate final orders of the juvenile court in dependency proceedings, absent a petition filed pursuant to section 388 and proceedings in accordance with that section.

Therefore, let a peremptory writ of mandate issue commanding respondent, Contra Costa County Superior Court, in *In re Angelyca M.* (Super. Ct., Contra Costa County, 2003, No. J99-00168), to set aside the orders entered

October 3, 2003, setting aside the original jurisdictional findings, and November 13, 2003, setting a new contested jurisdictional hearing for December 12, 2003, and to instead deny the motion to set aside the jurisdictional findings of May 14, 1999.

The stay previously imposed shall remain in effect until the remittitur issues. The parties shall bear their own costs.

Swager, J., and Margulies, J., concurred.

On April 19, 2004, the opinion was modified to read as printed above.