Filed 5/19/14  In re L.A. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| In re L. A., a Person Coming Under the Juvenile Court Law. | C074113 |
| PLACER COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES, | (Super. Ct. No. 53003373) |
| Plaintiff and Respondent, | |
| v. | |
| K. C. et al., | |
| Defendants and Appellants. | |

Ashlie A., mother of the minor, appeals from orders of the juvenile court terminating her parental rights.  (Welf. & Inst. Code,[1] §§ 366.26, 395.)  Mother contends the court erred in appointing her a guardian ad litem and in failing to vacate the

[1]    Further undesignated statutory references are to the Welfare and Institutions Code.

1

appointment on her request. Father also appeals from the termination order but limits his argument to asserting that if the order terminating mother's parental rights is reversed, he should receive the same result. We affirm.

FACTS

In February 2012, the juvenile court ordered the minor, L.A., detained, days after her birth, based on allegations that she was at risk of physical harm in the parents' care because mother suffered from mental and emotional problems including paranoia, tangential speech, and mood shifts and father's parole condition prohibited contact with all children, including the minor. The detention report stated that mother's mood and conversation fluctuated wildly during the social worker's interview with her at the hospital. Mother showed similar behavior in dealing with hospital personnel, father, and the baby. The hospital social worker said mother was staring off into space and losing her train of thought midsentence and the worker was concerned about mother's mental health and emotional instability. The doctor at the hospital told the social worker mother had a diagnosis of bipolar disorder with depression and had refused treatment. He said mother appeared extremely manic, agitated, and anxious and showed pressured speech and tangential thought processes. The hospital chaplain also reported observing mother's mood swings. Mother's only plan for care of the baby was to give her to father who, as a convicted sex offender, was not permitted to have contact with the minor.

At a pretrial hearing mother interjected comments repeatedly when the court was trying to get information from the social worker. Mother focused on issues of concern to her, ignoring the court's admonishments to speak to the social worker or her attorney. Eventually, the court cautioned her about interjecting and reminded her she had counsel.

The jurisdiction/disposition report filed in March 2012 stated the social worker attempted to interview mother about the allegations of the petition but mother was unable to focus. Mother was worried about the minor being exposed to Muslims, became emotional when asked about possible Indian heritage and said she would " 'lie to prevent

2

my baby from going to an Indian reservation.' " Mother decided she would write her own statement. The visit notes indicated that mother was agitated during the first visit, pacing, constantly talking and having difficulty focusing on the minor. The visit supervisor gave mother guidance on caring for the minor's needs but mother did not take the advice and was unable to feed the minor. In the second visit, mother was again agitated, moving the minor abruptly every few seconds and putting the pacifier rapidly in and out of the minor's mouth. Mother became quite upset, left the room suddenly, and finally had to be asked to leave the building because she was in the hall screaming. This visit was 18 minutes long. The social worker said mother had a weak parent-child bond, lacked parenting skills, and seemed resistant to learning them. Mother also showed little interest in managing her own mental health. Mother provided a written statement to the social worker explaining her erratic behavior in the hospital and denying she had been diagnosed with bipolar disorder.

On the morning of March 29, 2012, the case was called for the jurisdiction/disposition hearing but neither parent was present. Mother's counsel stated he had discussed the hearing with mother. Counsel said he explained the concept of a guardian ad litem and told mother he was going to ask that one be appointed for her. Counsel stated that mother had agreed to that. Based on counsel's representation, the court appointed a guardian ad litem for mother and continued the matter so that the guardian ad litem could talk with her. The case was recalled in the afternoon with the parents present.[2] The court told mother her counsel represented that he had spoken with her about being assisted by a guardian ad litem. Mother stated she was unsure of what

---

[2]     While the minutes of the hearing indicate mother's consent to appointment of a guardian ad litem occurred when the case was recalled, that portion of the hearing was not originally part of the record on appeal. We granted mother's request to augment the record with the transcript of the afternoon session.

that meant and the court went off the record to permit counsel to briefly talk with her about it. The court then asked mother if she felt that a guardian ad litem might be of help to assist her and explain the process. Mother responded that it would be. The court asked if mother would like to have the court appoint a guardian ad litem for her and mother responded that she would. The court informed mother that one had been appointed for her in the morning session.

At the contested jurisdiction/disposition hearing, both parents were present. Mother asked to correct the report because she had not been diagnosed with bipolar disorder at the time of the hearing and did not believe she was bipolar. The parents submitted the issues on the corrected report. The court sustained the petition and ordered services for the parents.

Mother submitted to two psychological evaluations as part of the case plan. Dr. Sidney Nelson concluded mother suffered from a severe mental disorder and possible diagnoses included psychotic disorder, bipolar disorder, and borderline personality disorder. Dr. Nelson was of the opinion that mother would not benefit from services. Dr. Schmidt's evaluation found mother showed evidence of disordered and paranoid thinking and that, even with intensive treatment, mother was not likely to change in six to 12 months and was resistant to taking psychotropic medication. The review report stated that the psychological evaluations were consistent with the social worker's observations that mother lacked insight, displayed rapidly fluctuating moods, and continued to refuse medication to treat her disorder. At the contested hearing, mother expressed willingness to be assessed for medication but did not say she would take it, reported she was continuing therapy sessions, and was in a parenting class. Mother interjected several times while the court made its ruling terminating services and setting a section 366.26 hearing.

At a hearing on a motion for de facto parent status by the foster parents, while the court was trying to get statements from counsel, mother interjected that she wanted to

discharge her guardian ad litem and wanted a new attorney "because nothing had been explained to [her] at all." The court cautioned mother about interrupting. Mother again insisted nothing was being explained and she did not understand what was going to happen. Counsel asked for a continuance to discuss the hearing with mother and the guardian ad litem. Mother interrupted with issues unrelated to the hearing, but agreed she needed more time before moving forward. Mother also suggested that if a continuance was not granted, she wanted another attorney. The court granted a continuance so that counsel and the guardian ad litem could meet with mother.

Mother was not present for the continued motion hearing. However, she was present at the trial setting hearing and did not renew her request to vacate the appointment of the guardian ad litem or discharge her attorney.

The assessment for the section 366.26 hearing stated the minor was likely to be adopted, mother's visits had decreased from twice weekly to monthly, there were several missed visits prior to the hearing and little evidence of bonding between the minor and mother. The social worker recommended termination of parental rights.

Mother was not present at the section 366.26 hearing. After hearing father's testimony and argument by the parties, the court terminated parental rights.

DISCUSSION

I

*Procedure On Appointment Of A Guardian Ad Litem*

Mother originally argued that the court erred in failing to obtain her consent to appointment of a guardian ad litem. However, the record as transmitted to the court was incomplete. After receiving respondent's brief, mother requested and was granted an augment to the record with the missing transcript which included her consent to the appointment. In her reply brief, mother acknowledges the consent but contends the appointment process nonetheless failed to satisfy due process because the court did not provide the required explanations of the function of the guardian ad litem when taking

5

her consent.  Mother recognizes that any final orders in the dependency proceeding may not be attacked and limits her arguments to the appointment itself and the order terminating parental rights.

A mentally incompetent parent must appear in a dependency case through a guardian ad litem.  (*In re James F*. (2008) 42 Cal.4th 901, 904; Code Civ. Proc. § 372.)  "The test [of competency] is whether the parent has the capacity to understand the nature or consequences of the proceeding and to assist counsel in preparing the case."  (*In re James F*., at p. 910.)

The effect of appointment of a guardian ad litem is to "remove control over the litigation from the parent, whose vital rights are at issue, and transfer it to the guardian."  (*In re Jessica G.* (2001) 93 Cal.App.4th 1180, 1186-1187.)  Following such an appointment, the guardian ad litem, rather than the parent, has the authority to make certain "tactical and even fundamental decisions affecting the litigation . . . ."  (*In re Christina B.* (1993) 19 Cal.App.4th 1441, 1454.)  Accordingly, a parent is entitled to due process before a guardian ad litem is appointed on his or her behalf.  (*In re Jessica G.*, at p. 1187.)

"Before appointing a guardian ad litem for a parent in a dependency proceeding, the juvenile court must hold an informal hearing at which the parent has an opportunity to be heard.  [Citation.]  The court or counsel should explain to the parent the purpose of the guardian ad litem and the grounds for believing that the parent is mentally incompetent.  [Citation.]  If the parent consents to the appointment, the parent's due process rights are satisfied.  [Citation.]  A parent who does not consent must be given an opportunity to persuade the court that appointment of a guardian ad litem is not required, and the juvenile court should make an inquiry sufficient to satisfy itself that the parent is, or is not competent.  [Citation.]"  (*In re James F*., *supra*, 42 Cal.4th at pp. 910-911.)

Mother contends the procedure to appoint the guardian ad litem was defective because the court did not provide the explanations required by *James F*. prior to taking her consent.

Here, there was an informal hearing in the morning which mother did not attend. Mother's counsel represented to the court that he had met with mother, discussed the hearing, explained the concept of a guardian ad litem, told mother he was going to ask that one be appointed for her, and that mother had agreed to the appointment. Because mother was absent and the explanation of the purpose of the guardian ad litem was not on the record, the procedure in the morning hearing was defective under the rule stated in *James F*. The process also failed to provide an adequate record for appellate review. (*In re Sara D.* (2001) 87 Cal.App.4th 661, 671.)

Mother was present when the hearing reconvened in the afternoon. Once again, the explanation of the purpose of the guardian ad litem, which presumably occurred during a conference between mother and counsel, was not a part of the record. Thereafter, the court asked if mother thought a guardian ad litem might be of help, to assist and explain the process to her, but did not explain the purpose and function of a guardian ad litem. The court asked mother if she would like to have a guardian ad litem appointed and mother agreed. The court informed mother of the results of the morning hearing where the guardian ad litem was appointed and indicated the guardian ad litem would contact her.

Most of the explanation of the purpose of the guardian ad litem appears to have been made by counsel off the record. Certainly the court's explanation was insufficient to explain that the guardian ad litem would take over control of the litigation and act on mother's behalf or that there were reasons for believing mother was incompetent. On this record, we must conclude there was error in the procedure to appoint a guardian ad litem. Such error is trial error and "amenable to harmless error analysis." (*In re James F.*, *supra*, 42 Cal.4th at pp. 915, 919.)

7

The *James F.* court did not address the appropriate harmless error standard, it stated only that if the "outcome of a proceeding has not been affected," error in the process of appointment of a guardian ad litem may be deemed harmless and reversal is not required. (*In re James F.*, *supra*, 42 Cal.4th at pp. 911, fn. 1, 918-919.) This language was considered in *In re Esmeralda S.* (2008) 165 Cal.App.4th 84, which concluded that the "outcome of the proceeding" referred, not to the outcome of the appointment of the guardian, but rather the outcome of the hearing from which the appeal was properly taken. (*Id.* at p. 93.) The *Esmeralda S.* court also considered the appropriate standard and reasoned the "more cautious approach" was to apply the harmless beyond a reasonable doubt standard. (*Id.* at p. 94.) We agree with the conclusions of *Esmeralda S.* and adopt the harmless beyond a reasonable doubt standard.

Mother recognizes that she may not attack previous orders which are now final and is limited to challenging the order terminating parental rights based on the erroneous appointment of a guardian ad litem. (*Contra Costa County Children & Family Services Bureau v. Superior Court* (2004) 117 Cal.App.4th 111, 119.) Mother is also limited to specific claims of prejudice and cannot rely on speculative assertions of how she might have handled the case differently from the guardian ad litem. (*In re Esmeralda S.*, *supra*, 165 Cal.App.4th at p. 95.) Mother's claims of prejudice are of precisely the latter variety and she invites us to follow decisions which based reversal on speculative claims. (See *In re Sara D.*, *supra*, 87 Cal.App.4th 661; *In re Jessica G. supra*, 93 Cal.App.4th 1180.) We decline the invitation, believing that the *Esmeralda S.* approach is better reasoned.

By the time of the section 366.26 hearing, mother's services had been terminated, the minor's characteristics supported the conclusion he was likely to be adopted, frequency of visitation had decreased, mother's recent attendance was somewhat irregular and there was no evidence the minor had a significant bond to mother. Although she appeared at the trial setting conference, mother did not appear at the section 366.26 hearing and offered no witnesses on her behalf. Mother does not claim she had

8

either witnesses who were not presented or facts to support a petition for modification, she asserts only that "the Court cannot speculate" as to what she would have done. We fail to see how the presence or lack of a guardian ad litem would have had any effect on the outcome of the hearing. Any error in the procedure to appoint the guardian ad litem was harmless beyond a reasonable doubt.

## II

### *Evidence Of Incompetence*

Mother argues the appointment of the guardian ad litem was not supported by substantial evidence of her incompetence and the error was not harmless beyond a reasonable doubt.

When a parent does not consent to appointment of a guardian ad litem, "the juvenile court should make an inquiry sufficient to satisfy itself that the parent is, or is not, competent. [Citation.] If the court appoints a guardian ad litem without the parent's consent, the record must contain substantial evidence of the parent's incompetence." (*In re James F.*, *supra*, 42 Cal.4th at pp. 910-911.)

This is not a case where consent was not sought or the parent failed to consent and evidence of incompetence was required before appointment of a guardian ad litem. Here, because the court and counsel were relying on mother's consent to the appointment, there was no inquiry on the record on the question of competence and none was needed because the consent satisfied due process. We have already concluded any error in the procedure of appointing the guardian ad litem was harmless beyond a reasonable doubt. The question of substantial evidence to support incompetency is irrelevant in these circumstances. Only if we had concluded that the procedural error was *not* harmless would the question have meaning. We did not so conclude and need not address the substantial evidence issue further.

9

III

*Withdrawal Of Consent*

Mother contends the court erred in failing to vacate the appointment when she withdrew her consent to the guardian ad litem and in failing to have a hearing on the continued necessity of the guardian ad litem.

At the hearing on a petition for de facto parent status, mother, who clearly did not understand the nature of the proceedings, complained that she wanted to discharge the guardian ad litem and have new counsel because they had not explained matters to her. She agreed they needed more time and suggested new counsel was needed if the continuance were not granted. For his part, counsel wanted time to speak to mother because she was not present at the last court appearance and he was unsure of her position on the motion. The guardian ad litem indicated they already had a meeting set up.

A party may move to vacate the appointment of the guardian ad litem at any time.[3] (*Contra Costa County Children & Family Services Bureau v. Superior Court, supra,* 117 Cal.App.4th at p. 119.)

---

[3]     Respondent suggests that the *Contra Costa* holding indicates such a motion should be bound by the requirements of a petition for modification. (§ 388.) However, that case clearly states the party may move to vacate the appointment *and* use the petition for modification to modify "orders in the case" suggesting that orders *other than the appointment itself* which are affected by an erroneous appointment can be subsequently modified. (*Contra Costa County Children & Family Services Bureau v. Superior Court, supra*, 117 Cal.App.4th at p. 119.) We do not agree that a petition to modify was required to vacate the appointment, in part because it is the parent's interests, not the minors' interests which are at stake.

10

It is clear from mother's statements to the court that she did not understand the purpose of the hearing and was upset that it had not been explained to her. Placing mother's statements in context, it is apparent that her underlying concern was information, not vacating the appointment. Counsel had not had an opportunity to explain the de facto parent hearing to her since she was not present at the last hearing and did not expect her opposition to it, but counsel and the guardian ad litem had planned to meet with mother to discuss the case. What mother wanted was an opportunity to speak with counsel and the guardian ad litem. Under the circumstances, the court properly permitted a short continuance to allow counsel and the guardian ad litem to satisfy her concerns and fully explain the procedures of the pending hearing.

If the explanation was inadequate or other issues arose, the court's order did not foreclose a hearing on the continued necessity for the guardian ad litem. However, mother was not present at the continued hearing. While she was present at the trial setting hearing, she made no statement and again was not present at the section 366.26 hearing. It appears that mother's concerns were satisfied. No prejudice appears from the court continuing the matter rather than immediately holding a hearing on the continued necessity for a guardian ad litem.

In her statements to the court, mother did ask for counsel to be relieved but on appeal raises the *Marsden*[4] issue of failure to hold a hearing on her request only as an aspect of prejudice in the appointment of a guardian ad litem. Accordingly, we do not address the *Marsden* issue.

---

[4]     *People* v. *Marsden* (1970) 2 Cal.3d 118.

IV

*Father's Claim*

Because we affirm mother's appeal, there is no basis for reversing the orders terminating parental rights as to father.  (Cal. Rules of Court, rule 5.725(g).)

DISPOSITION

The orders of the juvenile court are affirmed.


                 ROBIE   , J.


We concur:


  HULL   , Acting P. J.


  BUTZ   , J.