Filed 12/18/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re P.S. et al., Persons Coming Under the Juvenile Court Law. | |
| ALAMEDA COUNTY SOCIAL SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br>v.<br>S.G.,<br><br>    Defendant and Appellant. | A169561<br><br>(Alameda County Super. Ct. Nos. JD033255-02, JD033256-02, JD033257-02, JD034930-02) |

S.G., is the mother of four children, now aged eleven, nine, seven and five, all of whom were removed from her custody. She appeals a December 20, 2023 order denying a motion she filed in all four cases, before a scheduled 18-month review hearing while she was still receiving reunification services. The motion requested that the juvenile court appoint a psychological expert under Evidence Code section 730 to perform a bonding study. That section authorizes the court to appoint an expert "at any time" before or during trial when, among other circumstances, it appears that expert evidence "may" be required "by any party to the action." (Evid. Code, § 730.)

1

The juvenile court denied mother's motion in part on the stated ground that it was improper for the court to appoint an expert to aid mother in her own "defense." It appears but is not entirely clear that the court also ruled that mother's request for the study was unripe as a matter of law because it was made during ongoing reunification services rather than in connection with a recommendation to terminate her services.

We hold that a parent may request, and the court must consider a request, for the appointment of a psychological expert to aid the parent in her capacity as a party to the dependency proceedings. Court-appointed expert services under Evidence Code section 730 are not limited to those that may be of direct assistance to the juvenile court itself (commonly described as a neutral, court-appointed expert). Rather, section 730 makes clear that the court may, and where merited should, appoint an expert a party requests to effectively present her case.

We also hold that it is not categorically premature for a parent who is receiving reunification services to request the appointment of an expert to perform a bonding study during the reunification phase. Rather, the timing of a parent's request is one among many factors the court may consider in exercising its discretion to consider the parent's request.

Because the court denied mother's request on one legally erroneous ground and may have denied the request on a ground that is also incorrect, we cannot rule out the possibility it denied mother's request on legally untenable grounds rather than an informed exercise of discretion consistent with the law. We will vacate the court's order as to the two older children and remand the matter for a new hearing.

## BACKGROUND

On February 27, 2020, the juvenile court declared mother's three older children dependents of the court due to severe, ongoing domestic violence their father perpetrated against mother in their presence. It ordered the children to remain in mother's custody with family maintenance services.[1] On July 19, 2022, the court declared mother's youngest child a dependent on similar grounds, including that mother had continued to allow father access to the home where she resided with all four children and that father continued to engage in domestic violence against mother in the children's presence.

On September 29, 2022, the Alameda County Social Services Agency (Agency) removed all four children from mothers' custody on a protective custody warrant and placed them into foster care. On October 3, 2022, it filed a supplemental petition alleging the parents had been in continued contact with each other and father had been in contact with the children, despite both a domestic violence restraining order and the juvenile court order limiting father's access to the children. The petition alleged that mother had disclosed to him the confidential location of her safe house shelter, there had been another episode of domestic violence, and both parents had been arrested together on burglary charges. At the time of their removal, the children were nine, seven, five and two years old. The court sustained the petition, revoked earlier orders placing the children in mother's home and removed them from her custody.

---

[1] The case was commenced in Los Angeles County and later transferred to Alameda County.

3

The court ordered reunification services for mother (and bypassed them for father). Mother's case plan required her to participate in a domestic violence program, participate in individual therapy, develop positive support systems and visit with the children.

At the six-month review hearing, mother's reunification services were extended on the Agency's recommendation, and the Agency was granted discretion to allow her unsupervised visits. At the 12-month review hearing in November 2024, the court extended her services again on the Agency's recommendation.

By the time the 12-month review hearing took place, mother had been attending individual therapy and some domestic violence sessions and had a support network and safety plan in place. However, the Agency was concerned that she hadn't attended enough domestic violence counseling sessions due primarily to the program having canceled sessions. It was also worried that she might continue to initiate contact with father seeking emotional or financial support. Further, it expressed concern that she needed safe housing and that her visits hadn't progressed to unsupervised for a variety of reasons, including because of conflict with visiting center staff. All the children missed their mother, and the Agency believed that was negatively affecting them.

On December 5, 2024, about three weeks after the 12-month review hearing, mother filed a motion entitled "Motion For Court Appointed Expert To Conduct Bonding Study," asking the court to appoint a psychological expert under Evidence Code section 730 and pursuant to her constitutional rights as an indigent litigant to present a defense. Her motion identified a licensed psychologist who was available to be appointed, identified his hourly rate and appended a copy of his curriculum vitae. Her papers described the

4

scope of the expert's proposed work as encompassing subjects relating to "[m]ental status of mother and the minor; [¶] [t]he bond between biological mother and the minor; [¶] [d]etermine the nature and extent of the mother-children relationship and nature of interrelatedness between mother-children; [and] [¶] [o]pinion as to whether terminating the relationship would be detrimental (due to severing a bond) to the [children] even when balanced against the benefit of a stable adoptive home." Legally, she asserted the expert's assistance was relevant to potential application of the parental-benefit exception to defend against the termination of her parental rights.[2] The motion concluded by asking the court to "appoint an expert to conduct a bonding study so that she may vigorously attempt reunification with her children."

The thrust of her motion was not that the expert's services were necessary to aid *the juvenile court* (although her motion asserted that the information would be helpful to the court), but that they were needed to assist *her counsel* to mount a defense. She argued that the Agency had the benefit of the social worker's evaluations which she asserted were functionally the equivalent of expert opinion at public expense and thus, to aid in her defense, she too required an expert in order "to refute the social worker's expert opinion" concerning various subjects.

Her motion also addressed the timing. She argued her request for an expert was appropriately made during the reunification phase rather than

---

[2] Her papers also mentioned two additional areas of potential relevance: (1) the extent of her progress with her case plan (including her own progress in being psychologically capable of protecting the children from their father's domestic violence), (2) and the children's best interests in either continuing reunification services to her or returning to her custody, including factors such as their emotional and psychological needs.

later, after reunification services might have been terminated, both because family preservation was still the focus of proceedings at that juncture and because procuring an expert at this juncture would not risk delaying permanency for the children. In support, she cited caselaw holding that a parent's request for a bonding study made *after* reunification services had been terminated was "belated" and risked delaying the permanency process. (*In re Richard C.* (1998) 68 Cal.App.4th 1191, 1197 (*Richard C.*).) The appellate court explained in that case, "While it is not beyond the juvenile court's discretion to order a bonding study late in the process under compelling circumstances, the denial of a belated request for such study is fully consistent with the scheme of the dependency statutes, and with due process." (*Ibid.*) Instead, it warned, the parent is "required to muster her evidence before the termination of reunification services." (*Id*. at p. 1196; see also *In re Marilyn H.* (1993) 5 Cal.4th 295, 305 ["The state's interest requires the court to concentrate its efforts, once reunification services have been terminated, on the child's placement and well-being, rather than on a parent's challenge to a custody order"].)

At a hearing held on December 20, 2023, the Agency opposed the motion orally on the sole ground that it was "premature" because the 18-month review hearing was set to take place in about three months. The Agency argued that the motion "would best be reconsidered once reunification services are terminated." Counsel for father and counsel for the children also opposed the motion.

The juvenile court then announced its ruling denying the motion. "So I just want to be clear, I mean, I've not seen a motion like this before, because I think that it's not timely." The court went on to read from mother's brief the description of the services she wanted the expert to provide. It then

6

observed, "That sounds to me like I'm helping her defense. · And the only point in this motion really should be to argue to the Court that the Court requires this information for an assessment I need to make. · Not to help in mother's defense." [¶] So on the papers it's just an odd motion. . . . [¶] [S]he is asking the Court to pay for work that she needs to do. . . . [¶] . . . [¶] . . . [S]he is way out-of-line in asking the Court to not bill for her investigation, and to help her do her job.  That's not the Court's job and the motion is denied."

The court did not encourage mother and her counsel to renew the motion later (though they ultimately did).  It commented, "Honestly, I hope not to see it again if this is the bases for the next motion.  Because really one would [expect to] see this motion regarding a [Welfare and Institutions Code section] 366.26 hearing with a recommendation of termination of parental rights.  There's at least an argument to be made.  Although potentially, and probably not a successful one, that the Court might require a bonding study at that time.  But at this time [the motion is] not filed appropriately, timely, and I don't think the issue is yet ripe.  So the motion is denied."

Mother timely appealed in all four cases.

**DISCUSSION**

**I.**

***Mootness***

Before turning to the issues, we must address whether these appeals are justiciable.[3]

---

[3]  At the parties' request, we have taken judicial notice of the relevant juvenile court records reflecting the developments described here.  (See *In re D.P.* (2023) 14 Cal.5th 266, 287 (*D.P.*) [recognizing appellate court's power to take additional evidence regarding potential mootness].)

7

Several months after the juvenile court denied mother's request for the appointment of a psychological expert, it held an 18-month review hearing for all four minors (on May 1, 2024) at which it terminated mother's reunification services, denied a renewed request by her for a bonding study and scheduled a hearing under Welfare and Institutions Code section 366.26.[4]  After that, on August 28, 2024, it conducted a hearing under section 366.26 for the two younger children, declined to terminate mother's parental rights as to them, selected guardianship as their permanent plan and dismissed their cases.

At the same hearing, it ruled that a hearing under section 366.26 was not in the best interests of the two older children because they were not adoptable and as of the hearing date nobody was willing or able to become their legal guardian.  It ordered them in continued out of home care, identified legal guardianship as their permanent plan, and continued their cases for a review hearing in six months, on February 24, 2025.  Mother has filed a separate appeal from the court's rulings announced on August 28, 2024, in all four cases.

In light of these developments, we requested supplemental briefing as to whether mother's appeals are now moot.

"A case becomes moot when events ' "render[] it impossible for [a] court, if it should decide the case in favor of [appellant], to grant him any effect[ive] relief." ' " (*D.P.*, *supra*, 14 Cal.5th at p. 276.)  To avoid mootness, a parent must demonstrate "a specific legal or practical consequence that would be avoided upon reversal of the [challenged ruling]." (*Id.* at p. 273; see also *id.*

_____

[4]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

at p. 277 ["relief is effective when it 'can have a practical, tangible impact on the parties' conduct or legal status' "].)

Mother's appeals in her two older children's cases are not moot. Those cases are still pending in the juvenile court, no hearing under section 366.26 has taken place, and a ruling by this court in mother's favor enabling her to seek the appointment of a psychological expert could have practical consequences in the proceedings. If the court proceeded to a hearing under section 366.26 for either child, then an expert bonding study could be relevant to application of the parental benefit exception if the court considered terminating mother's parental rights. (See *In re E.T.* (2013) 217 Cal.App.4th 426, 436 [" ' "An issue is not moot if the purported error infects the outcome of subsequent proceedings" ' "]; see, e.g., *In re M.F.* (2022) 74 Cal.App.5th 86, 111 [appeal from dispositional order limiting duration of reunification services not mooted by order returning children to parent's custody because "we are . . . not persuaded that this purported error might not have the potential to affect further proceedings" given possibility children could be removed from parental custody again].)

Mother concedes, however, that her appeals in the cases of her two younger children *are* moot as to her request for a bonding study for purposes of assessing whether it would be detrimental to terminate her parental rights, because the court ultimately did not terminate her parental rights over the younger children and instead ordered guardianship as their permanent plan. We accept this concession and agree. Accordingly, those appeals will be dismissed as moot.

The Agency contends that mother's appeals are moot as to all four children because she did not appeal the subsequent May 1, 2024 orders that terminated her reunification services at the 18-month review hearings and

9

declined her renewed request for a bonding study. We do not agree this renders her appeals moot. The Agency cites no authority that it does.[5] Presumably, mother didn't appeal the orders entered at the 18-month review hearing because she had no basis to do so. But even though those orders were appealable, were not appealed and thus are now final, we can still grant her effective relief in *these* appeals.

In the first place, there is no logical connection between those unappealed orders and what mother is trying to achieve by way of these appeals. The fact that the court's termination of reunification services is now final, and the fact that mother tried and failed a second time at the 18-month review hearing to obtain the appointment of a bonding expert, has no bearing on whether a decision in *these* appeals could be of any practical use to her in procuring the appointment of a bonding expert for use at a potential hearing under section 366.26 for her two older children.

Moreover, even if there were some logical connection, if we were to remand these cases the juvenile court would have the power to entertain a petition under section 388 to modify those orders on a proper showing even though they are now final. (See *In re Ryan K.* (2012) 207 Cal.App.4th 591, 598 [juvenile court had jurisdiction to consider section 388 petition seeking change of minor's custody on remand after appeal from dispositional order terminating jurisdiction; after remand, parties cannot "relitigate facts that were before the court at the time of the order or judgment appealed" but

---

[5] The cases it cites do not address mootness but rather principles governing the scope of issues properly raised on appeal. (See *In re Christopher B.* (1996) 43 Cal.App.4th 551, 558-559 [waiver]; *In re Marriage of Broderick* (1989) 209 Cal.App.3d 489, 501-502 [invited error, waiver and theory of trial].) Those authorities are not pertinent.

10

"[a]fter remand and reinstatement of jurisdiction, mother was free to file—and court was free to consider—section 388 petition for modification, including any new developments"]; *Contra Costa County Children & Family Services Bureau v. Superior Court* (2004) 117 Cal.App.4th 111, 119 [recognizing section 388 petition as proper remedy to attack final, unappealed orders in a dependency case].)

We will therefore proceed to the merits in mother's appeals of the cases of her two older children.

## II.

### *Party-Affiliated Experts*

In relevant part Evidence Code section 730 states: "When it appears to the court, *at any time* before or during the trial of an action, that expert evidence is or may be required by the court *or by any party to the action*, the court on its own motion *or on motion of any party* may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required." (Italics added.)

Mother argues the juvenile court erred by denying her motion on grounds that it was premature and that she sought the expert to aid her defense rather than to assist the court. She asserts that under Evidence Code section 730, the juvenile court has discretion to appoint an expert to aid her defense and that her motion was brought at an appropriate juncture.[6]

---

[6] Mother asserts only that this was state law error under section 730; although in the juvenile court she asserted a constitutional right to the appointment of an expert, on appeal she does not reprise that issue and expressly disclaims that she is asserting a constitutional claim.

Because the court never considered her request on the merits, she asserts the matter should be remanded for a new hearing.

The court's power to appoint an expert under this statute is discretionary and reviewed for abuse of discretion. (See *In re Jennifer J.* (1992) 8 Cal.App.4th 1080, 1084.) However, "[t]he abuse of discretion standard is not a unified standard; the deference it calls for varies according to the aspect of a trial court's ruling under review." (*Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711.) The trial court's factual findings are reviewed for substantial evidence; its conclusions of law are reviewed de novo; and its application of the law to the facts is reversible only if it is "arbitrary and capricious" (*id.* at pp. 711-712) or " ' " 'patently absurd,' " ' " meaning that " ' " 'no judge could reasonably have made the order' " ' " in question. (*In re Caden C.* (2021) 11 Cal.5th 614, 641.) A court's exercise of discretion must "be based on correct legal premises and, therefore, the use of an incorrect legal standard necessarily constitutes an abuse of discretion." (*Cisneros v. Department of Motor Vehicles* (2024) 104 Cal.App.5th 381, 422.)

### A.     Appointment of Experts

Mother's request for a court-appointed mental health expert to assist her, rather than the court, was proper under Evidence Code section 730.[7] We agree with her contention that the statute authorizes the appointment of an expert to aid a party and does not limit court-appointed experts only to those that could be of assistance to the court itself. Indeed, on appeal the Agency does not contend otherwise.

---

[7] This aspect of the court's ruling calls for our independent review. (See *In re R.C.* (2011) 196 Cal.App.4th 741, 748 ["the proper interpretation of a statute and the application of the statute to undisputed facts are questions of law, which we review de novo"].)

The statute's plain language broadly authorizes a court-appointed expert when "expert evidence is or may be required by the court *or by any party to the action*." (Evid. Code, § 730, italics added.) This language is not ambiguous, and it is dispositive. When statutory language is clear, " ' "courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend." ' " (*Shiheiber v. JPMorgan Chase Bank, N.A.* (2022) 81 Cal.App.5th 688, 696.) And here, no such absurdity has been suggested to us or is apparent. The statutory language "or by any party to the action" plainly authorizes the appointment of an expert for a party's own purposes.

A related statute further supports our conclusion. Under Evidence Code section 731, the funding source for a court-appointed expert in a juvenile dependency case (as well as in a criminal case) depends on whether the expert is party-affiliated or neutral. In relevant part it states: "(a)(1) In all criminal actions and juvenile court proceedings, the compensation fixed under Section 730 shall be a charge against the county in which the action or proceeding is pending and shall be paid out of the treasury of that county on order of the court. [¶] (2) Notwithstanding paragraph (1), if the expert is appointed for the court's needs, the compensation shall be a charge against the court." (Evid. Code, § 731, subd. (a).) Evidence Code section 731 thus specifies that the cost of a court-appointed expert is born by the court if the expert is appointed to assist the court and, by implication, by the county if the expert is appointed because the "expert evidence is or may be required . . . by any party to the action." (*Id.,* § 730.) There would be no need for the Legislature to differentiate between the public funding sources for a court-appointed expert if the court's power to appoint an expert were limited to experts serving "the court's needs" only. (*Id.*, § 731, subd. (a)(2).)

13

Finally, our conclusion is reinforced by consideration of the primary purpose for which mother sought an expert in this case: to perform a bonding study. *Caden C.*, *supra*, 11 Cal.5th 614, the Supreme Court's seminal decision addressing the beneficial relationship exception which allows a parent to avoid the termination of her parental rights in appropriate circumstances, did not directly address whether the juvenile court has the power to appoint an expert *for a party*. But its reasoning strongly supports the conclusion that the juvenile court does.

Under that exception, as articulated by *Caden C.*, a parent whose reunification services have been terminated bears the burden of proof, and to avoid the termination of her parental rights must prove: (1) that she had "regular visitation and contact with the child," (2) "that the child has a substantial, positive, emotional attachment to the parent—the kind of attachment implying that the child would benefit from continuing the relationship," and (3) "that terminating that attachment would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*Caden C.*, *supra*, 11 Cal.5th at p. 636.)

Particularly relevant here is the Court's discussion of the complexity of the third element, which entails careful weighing of potential harms and benefits: "[U]nderstanding the harm associated with severing the relationship is a subtle enterprise—sometimes depending on more than just how beneficial the relationship is. In many cases, 'the strength and quality of the natural parent/child relationship' will substantially determine how detrimental it would be to lose that relationship, which must be weighed against the benefits of a new adoptive home. [Citation.] A child would benefit from continuing a strong, positive, and affirming relationship, and it would be destabilizing to lose that relationship. Sometimes, though, a

14

relationship involves tangled benefits and burdens.  In those cases, the court faces the complex task of disentangling the consequences of removing those burdens along with the benefits of the relationship." (*Caden C.*, *supra*, 11 Cal.5th at p. 634.)  It concluded that, "[t]o gauge and balance these weights can be a daunting prospect for trial courts." (*Id.* at p. 635.)  Since it is a "daunting" calculus for a juvenile court to make, in many cases it will be even more daunting for a parent to prove, especially without the assistance of an expert.

Although a bonding study or other expert evidence is not required as a matter of law to prove the exception (*In re J.D.* (2021) 70 Cal.App.5th 833, 862), and " '[t]here is no requirement in statutory or case law that a court must secure a bonding study as a condition precedent to' terminating parental rights [citation]' " (*In re M.V.* (2023) 87 Cal.App.5th 1155, 1179), in *Caden C.* our Supreme Court strongly encouraged their use, "instruct[ing] juvenile courts to 'seriously consider, where requested and appropriate, allowing for a bonding study or other relevant expert testimony.' " (*In re M.V.* at p. 1179, quoting *Caden C.*, *supra*, 11 Cal.5th at p. 633, fn. 4.)  A juvenile court can appoint a neutral expert for that purpose under Evidence Code section 730, but it is not uncommon for parties to have their own experts, as was true in *Caden C.* itself.  (See *Caden C.*, at p. 627 [noting the evidence included "reports from the Agency," "a bonding study from Mother's expert" and "a clinical consultation report from the Agency's expert"].)  Both the logic and the context of *Caden C.* support our plain language construction of Evidence Code section 730.

For all these reasons, the juvenile court's assumption that the "only" situation in which it is appropriate to appoint an expert under Evidence Code section 730 is when "the Court requires this information for an assessment I

15

need to make" but "[n]ot to help in mother's defense" is mistaken. The court's assumption cannot be reconciled with the statute's plain language. The juvenile court abused its discretion by denying mother's motion based on this incorrect legal premise. (See *Cisneros v. Department of Motor Vehicles*, *supra*, 104 Cal.App.5th at pp. 422, 423.)

## B. Timing

This brings us to the mother's second argument: that the juvenile court also erred by concluding her request for an expert was not yet "ripe."

The parties do not directly address the standard of review that applies to this aspect of the court's ruling. Mother asserts we should review every facet of the court's ruling de novo, as presenting questions of statutory interpretation (which this issue does not) or pure questions of law on undisputed facts. The Agency argues the court's ruling across the board must be reviewed for abuse of discretion.

Neither position is particularly illuminating, and our independent research cuts both ways. In other contexts, there is authority that appellate courts "review an issue's ripeness de novo." (*City of Santa Maria v. Adam* (2019) 43 Cal.App.5th 152, 162 [justiciability]; *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th 1559, 1582 [availability of declaratory relief under Code Civ. Proc. § 1060]; accord, *Felkay v. City of Santa Barbara* (2021) 62 Cal.App.5th 30, 39 [ripeness of regulatory takings claim].) On the other hand, to the extent this aspect of the juvenile court's ruling reflected any "weighing of the evidence" or "balancing of . . . competing interests," we would review it for abuse of discretion. (See *Stiavetti v. Clendenin* (2021) 65 Cal.App.5th 691, 706; see also *Caden C.*, *supra*, 11 Cal.5th at p. 641 [abuse of discretion applies when lower court "balance[s] factual determinations"].)

16

On this record, it is unnecessary to resolve which standard applies because this aspect of the trial court's ruling is unclear, and therefore we deem it necessary for the court to reconsider the motion and clarify its consideration of mother's need for the appointment of a bonding expert concerning her two older children.

The record does not clearly reflect whether the court believed, as mother asserts, mother's request for a bonding study was categorically too early and rejected her request in part on that ground, or instead, as the Agency argues, understood it had the power to appoint an expert for mother at that juncture but chose not to do so because its conclusion that the request was premature was based on a weighing of the facts and circumstances at that time. In other words, there is ambiguity whether the court considered the circumstances and found that, at the time, such services were not required. (Evid. Code, § 730).

If, as mother asserts, the court believed it had no discretion yet to exercise, that would have been legal error. The statute's plain language authorizes the appointment of such an expert "*at any time* before or during the trial of an action." (Evid. Code, § 730, italics added.) At least while a case is still in the reunification phase, as it was here, there is no bright-line juncture at which it is too early for a court to consider a parent's request for a bonding study on the merits.

Consideration of the policies and goals of the dependency system supports our conclusion. No case has addressed whether and when a parent's request for a bonding study might be too early. The only case of which we are aware that addresses when a parent should seek a bonding study involved a request that came too *late*. (See *Richard C.*, *supra*, 68 Cal.App.4th at pp. 1195-1197 [no abuse of discretion to deny request for bonding study made

17

after reunification services had been terminated].) As noted, *Richard C.* suggested that, absent "compelling" circumstances, a parent must request a bonding study during the reunification phase, when the focus of the proceeding is still on family preservation rather than on achieving stability and permanency for the child. (See *ibid*.) It explained that, "[b]onding studies after the termination of reunification services would frequently require delays in permanency planning," which is contrary to the goals of the dependency system. (*Id*. at p. 1198; cf. *In re M.V., supra,* 87 Cal.App.5th at pp. 1178-1182 [juvenile court abused discretion in denying parents' request during § 366.26 hearing for new bonding study after court-ordered expert prepared deficient study; "ordering a supplemental bonding study would not have delayed the permanency hearing" because court continued it for three months for other reasons and "there is no reason to believe three months would not have been sufficient for him or another expert to perform a proper bonding study"].) Bonding studies can be particularly helpful in cases where a child has a "complex parental relationship with both positive and negative aspects."[8] (*In re M.V.,* at p. 1179.)

As mother argues, she did what the caselaw instructed her to do. She asked for the appointment of an expert to perform a bonding study several months before the scheduled 18-month review hearing, which was in

_____

[8] Although the parties have not briefed the issue and we will not prejudge it, that may be the situation here. Details contained in the reports from both review periods, as well as comments by counsel at the six-month and twelve-month review hearings, indicated the children had an emotional bond with mother that persisted despite their separation from her. On the other hand, there was also evidence her visitation was sometimes punctuated by outbursts, she sometimes struggled with emotional regulation, and two visitation centers ended up cancelling their services for her because of conflict with the staff.

sufficient time to enable her to "muster her evidence before the termination of reunification services." (*Richard C.*, *supra*, 68 Cal.App.4th at p. 1196.)

The Agency points out that if, at the upcoming 18-month review hearing, the court scheduled a section 366.26 hearing, there would still be a gap so that the adoption assessment could be prepared (see § 366.22, subd. (c)(1)). That is true so far as it goes. (See *In re Marilyn H., supra*, 5 Cal.4th at p. 310 [noting possible four-month gap].) But the possibility that in some circumstances an expert might be able to complete a study in the "short period" between termination of services and a potential section 366.26 hearing (*Richard C.*, *supra*, 68 Cal.App.4th at p. 1196) does not mean it is categorically premature to ask for a bonding study earlier.

The juvenile court implied that mother's motion might become "ripe" if and when a recommendation to terminate her parental rights was filed, but again, that does not render her request categorically premature. Such a bright-line rule (if indeed a categorical rule is what the court meant to suggest) would fail to leave any flexibility for the judgments of counsel about how best to manage the marshalling of evidence on a parent's behalf.

A one-size-fits-all rule of timing ignores the wide variety of families who come into the dependency system and the different circumstances they must address. How expeditiously a bonding study can be conducted depends on the circumstances of the particular family. Its size, in particular the number of children, will bear on how much time is needed for a useful bonding study to be prepared. The children's ages and whether any of them have special needs could also have a bearing. The frequency and length of parental visits that are currently permitted and that are likely to be permitted if and when reunification services are terminated will also affect how long it will take a bonding expert to observe and evaluate the parent-

19

child relationships. A categorical rule about when a request for a bonding study must be made could result in studies that are incomplete or uninformative.

Finally, we note the dependency scheme is not meant to operate as a "trap" for parents. (*In re J.P.* (2017) 14 Cal.App.5th 616, 626.) Parents should not be forced to thread a needle timing-wise in asking for a bonding study, particularly in light of the Supreme Court's strong encouragement of their use in appropriate cases. The dependency system is focused on achieving prompt resolution of a child's status and avoiding unnecessary delay. (See *D.P., supra,* 14 Cal.5th at p. 284; *In re Marilyn H., supra,* 5 Cal.4th at pp. 308, 310; § 352, subd. (a)(1).)

Hence, there is no one-size-fits-all categorical rule governing the timing of a parent's request for a bonding study. Rather, juvenile courts must exercise their discretion in deciding whether and when to appoint an expert for that purpose. In exercising that discretion, juvenile courts should consider the particular circumstances of the family that will bear on how much time will be needed to obtain a useful and informative study. In considering timing, courts must also be mindful of the Supreme Court's instruction to "seriously consider" allowing a parent to procure a bonding study "where requested and appropriate" (*Caden C., supra,* 11 Cal.5th at p. 633, fn. 4) as well as the potential that a late-ordered study may delay permanency planning for the children.

Lacking guidance from this court or the caselaw, neither the parties nor the juvenile court specifically addressed any timing-related circumstances, and we will not prejudge them. Such matters should be addressed on remand.

20

To be clear, parents are not automatically entitled to the appointment of a bonding expert under Evidence Code section 730; a sufficient need for one must be shown. We also express no opinion on the merits of mother's request for a bonding study. The bases of the juvenile court's ruling are unclear, and the parties do not address the merits of her request on appeal. We hold only that the juvenile court erred to the extent it denied mother's request on the ground it improperly sought to aid mother rather than the court and/or on the ground mother was legally precluded from making the request at the time she did. Therefore, the matter must be reheard.

## DISPOSITION

The December 20, 2023 orders denying the request for the appointment of an expert are vacated in juvenile court case numbers JD-033255-02 and JD-033256-02, and the matters are remanded for further consideration of the request in light of current circumstances in accordance with the views expressed in this opinion. The appeals in juvenile court case numbers JD-033257-02 and JD-034930-02 are dismissed as moot.

21

_____

STEWART, P.J.

We concur.

_____

MILLER, J.

_____

DESAUTELS, J.

*In re P.S.* (A169561)

22

Trial Court:Alameda County Superior Court

Trial Judge:        Hon. Ursula Jones Dickson

Counsel:

Erin W. Keefe, under appointment by the Court of Appeal, for Defendant and Appellant.

Donna R. Ziegler, County Counsel, Samantha N. Stonework-Hand, Deputy County Counsel, for Plaintiff and Respondent.